SUSAN HORNER, appellant,

and

ERASTUS CORNING, respondent.

1. The statute (*Rev.* Chancery, p. 117, § 73,) allowing an absent defendant to enter an appearance before the sale of· the premises under foreclosure, and thereupon authorizing a *supersedeas* to· be issued, is not mandatory. To justify the interference of the court, such party ought to show surprise and merits.

2. That a' notice sent to an absent defendant was not delivered to her on account of her illness, cannot affect the complainant.

3. A complainant, in foreclosing, is not bound to resort to funds in the hands of a receiver, alleged by another defendant to be primarily liable for the mortgage debt, even if that fact were proved; nor to wait until alleged equities between the receiver and such defendant are settled.

4. That the premises were ordered to be sold in parcels, is not a defence to the suit that may be raised by plea, answer or demurrer. If such order be erroneous, application should be made to the chancellor to so amend the final decree as to protect the rights of the party.

So far as necessary to an understanding of the points decided, the facts of this case appear in the opinion of Hon. Amzi Dodd, a special master, sitting for the chancellor.

*Mr. A. Q. Keasbey* and *Mr. C. Parker*, for appellant.

*Mr. T. N. McCarter*, for respondent.

THE MASTER.

The suit in which this petition is presented was for the foreclosure of a mortgage on about five hundred acres of land in the township of Pompton, and county of Passaic. Large and valuable steel and file factories, and also an extensive body of water and water-power, are included in

the mortgaged premises, which, for many years prior to June, 1874, were owned and managed by James Horner and James Ludlam, as partners. In June, 1874, James Horner died, leaving a last will, by which he devised to his daughter, Alice Buckingham, of New York, the bulk of his estate. She was appointed executrix of the will, and trustee for her sister, Susan Horner, whose portion of her father's estate was devised to Mrs. Buckingham, in trust for her benefit. In November, 1874, the surviving partner, James Ludlam, was appointed by this court, receiver of the partnership assets. In 1875, Erastus Corning, the holder of two mortgages on the property in Pompton, given by Horner and Ludlam, filed his bill to foreclose, making Alice Buckingham and her sister, Susan Horner, and James Ludlam, defendants. An answer was filed by Mrs. Buckingham, and after a hearing upon bill, answer and proofs, a final decree was entered, execution for the sale of the premises issued to a master, and the sale duly advertised. Three adjournments of four weeks each had been made by the master under the direction of the court, when the present petition was filed by Susan Horner, against whom a decree *pro confesso* had been taken as an absent defendant, praying that the sale might be stayed, and that she might be let in to answer and defend. At the commencement of the suit the petitioner was a resident of the state of New York, and has so continued to be since. She was not served with process, but an order of publication was taken and published according to law.

Upon the argument of the petition, her right to be let in to answer and to have the sale stayed, was contended for under the seventy-third section of the chancery act (*Rev.* p. 117); the counsel of petitioner insisting that by the true construction and meaning of that section, her right to the relief sought for in her petition was not dependent upon the discretion of the court, but was absolute and unrestricted by any terms or conditions other than those named in the section itself. Meritorious defences were claimed to

Horner *v.* Corning.

be set out in the petition sufficient to entitle her to the
sought for relief upon sound judicial discretion, but the
argument was directed mainly to the question of strict legal
right.    The section by which this right was said to be con-
ferred was enacted in 1820, and has ever since been a part
of our chancery act.    It provides:

" That in all cases of a decree for sale of mortgaged premises against
any absent defendant, if such defendant shall at any time before sale
made by the sheriff, in.pursuance of any writ of execution, cause his
appearance to be entered in court, and shall pay such costs to the com-
plainant as the court shall think reasonable, then it shall and may be
lawful for the said court, by a writ of *supersedeas,* directed to the sheriff
or other officer, to stay his proceedings on the execution for the sale of
such mortgaged premises, and thereupon such proceedings shall and
may be had as if an appearance had been entered within such time
and in such manner as, according to the rules of the court, the same
ought to have been entered in case the first process in the suit had
been duly served."

No judicial interpretation of the foregoing provisions
seems ever to have been made by the courts of this state.
Previous to the argument of this petition, I had supposed
them to authorize the opening of a decree and the stay of
proceedings, upon grounds only of surprise and merits;
and this, I think, has been the construction of them gener-
ally made by the profession.    The different meaning con-
tended for by the petitioner's counsel, has, however, been
supported with so much force of reason and by the rulings
of Chancellor Walworth upon a similar statute of the state
of New York, that I have been constrained to regard the
true construction as involved in difficulty and doubt.    But,
upon the best consideration I have been able to give, I can-
not hold the language of this section to be peremptory and
exclusive of the question of merits.    I shall, therefore,
advise that the prayer of the petition be denied and the
rule to show cause be dismissed; but, regarding the ques-
tion as one of no small importance to the parties in this
suit and of great importance in itself, I will advise that the
sale be adjourned by the master for the further period of

Horner *v.* Corning.

four weeks, to the end that the petitioner may, by an appeal, have my ruling reviewed and, if erroneous, corrected. An opportunity will be afforded to obtain from the appellate court a further stay of the sale, if that court should think fit to grant it, before the time of adjournment now advised shall have ended.

In the defences set out in the petition I can find nothing which I have not already held to be insufficient on the final hearing of the cause. So far as the matters contained in the petition would be admissible as defences to the present bill of foreclosure, they were insisted on by the counsel of Mrs. Buckingham, and an answer by the petitioner would be only a rehearing of the cause. If the views upon which the decree was then advised by me were mistaken, the remedy was by an appeal.

I will advise as above.

The opinion of the court was delivered by

DALRIMPLE, J.

The appellant is an absent defendant in a foreclosure suit in the court of chancery. After decree *pro confesso,* final decree and execution, which appear to be entirely regular, the appellant, before sale of the mortgaged premises, entered her appearance under the seventy-third section of the chancery act (*Rev.* p. 117), and thereupon filed her petition, claiming the right to have a writ of *supersedeas* issue to the master to stay the sale of the mortgaged premises, and to have the final decree opened or set aside, to the end that she might make her defence, the same as if she had been served with process, and had appeared on return thereof, as required by the rule and practice of the court.

It is claimed that the statute referred to is mandatory, and that under the circumstances it is the legal right of the appellant now to appear and defend the suit. In my opinion, the statute will not bear the construction contended

for by appellant. It but declares a power which was, at the time 'of its passage, inherent in the court, and, perhaps, to some extent, regulates the exercise of that power. It is neither in its terms nor by its spirit mandatory. It enacts that if an absent defendant in a foreclosure case shall, before sale of the mortgaged premises, enter an appearance and pay such costs as the court shall deem reasonable, it shall be lawful for the court, by writ of *supersedeas*, directed to the officer holding the execution, to stay proceedings thereon, and that thereupon such proceedings on the part of such absent defendant may be had as if process had been served and an appearance duly entered in obedience thereto. It will be observed that by the statute the defendant's right to defend the suit can only arise after appearance entered before sale, the payment of such costs as the court shall deem reasonable, and the writ of *supersedeas* issued by order of the court. The act simply declares it lawful for the court, under the circumstances named, to issue the *supersedeas*. Whether it shall or not issue, depends not on the will of the party, but on the discretion of the court, to be exercised in view of all the circumstances of the case. I think a party who invokes the aid of the court under this statute should show, at least, surprise and merits. The cases in New York to which we were referred, were governed by a statute different from ours.

Another ground for relief urged by appellant is, that the proceedings, though regular upon their face, are not so in fact. It appears that appellant was not advised of the proceedings against her, and had, in fact, no knowledge of the existence of the suit. It, however, very satisfactorily appears that the complainant did all that the law required him to do in order to bring in the appellant as an absent defendant. The solicitor of the complainant made inquiries of the proper person as to the residence of the appellant, upon making such inquiries, received' correct information, upon which he acted, and sent the notice required by the statute to the legal residence of the appellant. That the

relatives of appellant who received the notice did not, on account of the impaired health of appellant, communicate the notice to her, cannot affect the complainant. The attempt to prove that the place to which the notice was sent was not the legal residence of appellant, has not been successful.

It is, in the next place, urged by counsel of appellant that, assuming the proceedings to be regular in form and fact, the appellant has certain equitable defences against the complainant's mortgage, of which, without fault or laches on her part, she has not been able to avail herself, and in respect to which she is now entitled to be heard, and that for this reason the court, in the exercise of its discretion, ought to open the decree and let her in to defend, upon such terms as may be equitable. The complainant denies that appellant has shown or suggested to the court any equitable or legal defence against the mortgage in question.

I think that the appellant, at this stage of the case, in order to entitle herself to the interference of the court in her behalf, should clearly show, as against the complainant's mortgage, some equitable and meritorious defence. Has she shown any such? Her first ground of defence is that the mortgaged premises ought not to be sold to pay complainant's mortgage, until certain equities of some of the defendants against another are settled, and that one of the defendants, as receiver of certain personal estate and of the rents and profits of the mortgaged premises, ought to be first required to pay the complainant's mortgage out of the moneys and assets in his hands as such receiver, before the mortgaged premises are resorted to. But it is not shown, nor is it alleged, that the complainant is in anywise affected by these alleged equities. There is no question about the validity of complainant's mortgage, nor the amount due upon it; and upon what equitable or legal principle he should be compelled to run the hazard of delay until a controversy among the defendants is determined, I have not been able to see. It was suggested, on the argument,

that the complainant and the receiver were in collusion to effect a speedy sale and sacrifice of the mortgaged premises, so that the assets in the hands of the receiver may be relieved of their proper burthen. But I do not find any satisfactory proof of such collusion, and if there were, I am not prepared to say that it would afford any defence against the mortgage. The most, I think, that could be said of it would be that the complainant was in pursuit of his legal rights with an unworthy motive. But, however this may be, I think it should be observed that it is not satisfactorily shown by the evidence before this court, which may or may not be all that the appellant has upon the point, that, as against the receiver, the appellant has the equity she claims.

The next ground of defence urged is, that there is error in the final decree, in that the mortgaged premises, being subject to a mortgage prior to complainant's, are ordered to be sold in parcels. I have no doubt that the decree was made in this form advisedly, for reasons which at the time appeared satisfactory to the court. If, thereby, any inequity has been done the appellant, it is not a defence to the suit which can be interposed by plea, answer or demurrer. It has not been alleged that the complainant, in his bill or otherwise, asked the court to order a sale of the mortgaged premises in the mode directed by the decree. The fair presumption is that it was so ordered in consideration of the equities of some one or more of the defendants. If the appellant is in anywise aggrieved by the form of the decree, her remedy, if any, is not by petition to open or set aside the final decree and decree *pro confesso*. Her application should be to the court of chancery, to so amend the final decree as to preserve her rights; or, perhaps, she may have relief by appeal.

The result is that the decree of the court of chancery must be affirmed, but, under the somewhat peculiar circumstances, I think the affirmance should be without costs in this court.

Decree unanimously affirmed.